IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALIHA MADDEN, on behalf of herself and all others similarly situated,<br><br>         Plaintiff,<br><br>   -against-<br><br>MIDLAND FUNDING, LLC and MIDLAND CREDIT MANAGEMENT, INC.<br><br>         Defendants. | Civil No.: 7:11-cv-08149 (CS) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Thomas A. Leghorn
150 E. 42nd Street
New York, NY 10017

*Attorney for Defendants*

January 25, 2013

# TABLE OF AUTHOTIRIES

**Cases**

Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) ........................................................................ 2
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ......................................................... 2
Ben Nat'l Bank v. Anderson, 539 U.S. 1, 10 (2003) ........................................................ 3, 4, 5, 6, 7, 8
Evans v. National Bank of Savannah, 251 U.S. 108, 114 (1919) .................................................. 5
FDIC v. Lattimore Land Corp., 656 F.2d 139, 147-149 (5th Cir. 1981) ....................................... 8
Hudson v. ACE Cash Express, Inc., 2002 U.S. Dist. LEXIS 11226, 13 (S.D. Ind. 2002) .......... 3, 7
Krispin v. May Dep't Stores Co, 218 F.3d 919, 924 (8th Cir. 2000) .................................... 3, 7, 8, 9
Marquette National Bank v. First Omaha Service Corp., 439 U.S. 299, 301 (1978) ................. 6, 7
Munoz v. Pipestone Financial, LLC, 513 F. Supp. 2d 1076, 1079 (D. Minn. 2007) .................. 3, 7
Phipps v. Starkey, 417 F.3d 1006, 1011 (8th Cir. 2005) ............................................................ 3, 7

**Statutes**

12 U.S.C. §§ 85-86 ............................................................................................................ 3, 4, 5, 7
15 U.S.C. § 1692 ............................................................................................................................ 1
5 Del. C. § 943 ............................................................................................................................... 5
Del. C. § 944 .................................................................................................................................. 5
NY Banking Law § 14-a(1) ........................................................................................................... 2
NY General Business Law § 349 .................................................................................................. 2
NY General Obligations Law §§ 5-501, 5-511, and 5-513 ........................................................... 2
NY Penal Law § 190.40 ................................................................................................................. 2

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................................... 2

Defendants Midland Funding, LLC ("Midland") and Midland Credit Management, Inc. ("MCM") (collectively the "Defendants") respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment dismissing all claims against Defendants, with such other and further relief as this Court may deem just and proper.

## PRELIMINARY STATEMENT

Plaintiff, Saliha Madden ("Madden"), instituted this class action lawsuit alleging violations of the Fair Debt Collection Practices Act ("FDCPA")[1] predicated entirely on alleged violations of New York State anti-usury statutes. Specifically, Plaintiff alleges that on November 20, 2010, Defendant MCM, on behalf of Defendant Midland, sent a letter to Plaintiff which attempted to collect interest on Plaintiff's outstanding credit card debt at a rate of 27%. Midland had purchased the debt in question—a defaulted credit card account—ten days earlier from FIA Card Services, N.A., a national bank and wholly owned subsidiary of Bank of America Corporation. With respect to the alleged class action, the putative class includes all persons residing in New York to whom Defendants sent a letter attempting to collect interest in excess of 25% per annum. Defendants are entitled to summary judgment because the National Bank Act provides the exclusive remedy for claims of usury against both national banks and assignees of their receivables. Because Plaintiff's allegations are completely pre-empted by the National Bank Act, her complaint must be dismissed.

## ARGUMENT

### I. Standard of Review.

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled

---

[1] 15 U.S.C. § 1692 et seq.
1

5368690v.1

to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is not genuine unless the opponent has furnished enough admissible evidence "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is well-settled that, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996).

## II. Plaintiff's Amended Complaint Must be Dismissed Because Plaintiff's FDCPA Claim is Entirely Predicated on Inapplicable New York State Statutes that are Pre-Empted by the National Bank Act

### A. The National Bank Act Pre-Empts Plaintiff's state-law claims

Plaintiff's FDCPA claim is predicated solely upon allegations that Defendants violated various New York State statutes. (Exhibit 2, ¶¶ 10-20). Paragraph 55 of the Amended Complaint alleges that the "[d]efendants violated § 1692e and § 1692f of the FDCPA by charging, collecting and/or seeking to collect interest at a usurious rate from plaintiffs and the other class members . . . ." (Exhibit 2, ¶ 55). Plaintiff's Amended Complaint defines the putative class as "those persons residing in New York . . . who were sent letters by defendants attempting to collect interest in excess of 25% . . . ." (Exhibit 2, ¶ 32). It is this allegation upon which Plaintiff alleges that Defendants violated NY General Obligations Law §§ 5-501, 5-511, and 5-513, NY Banking Law § 14-a(1), NY Penal Law § 190.40, and NY General Business Law § 349. Id. As noted, the FDCPA claim is based entirely on the interest rate being in violation of these New York state laws and nothing else. Plaintiff, however, also brings separate causes of action under (1) NY General Business Law § 349; and (2) NY General Obligations Law §§ 5-501, 5-511, and 5-513. (Exhibit 2, ¶¶ 50-70). The purported basis for each cause of action is the same single factual allegation: that Defendants charged, collected, and/or sought to collect interest from Plaintiff at an allegedly "usurious rate." (Exhibit 2, ¶¶ 55, 58, 68).

Plaintiff's allegations that Defendants violated various New York State statutes ignore the well settled fact that such claims are expressly pre-empted by federal law. See Ben Nat'l Bank v. Anderson, 539 U.S. 1, 10 (2003). In Ben Nat'l Bank v. Anderson, the Supreme Court held that the National Bank Act ("NBA") "supersede[s] both the substantive and remedial provisions of state usury laws and create[s] a federal remedy for overcharges that is exclusive, even when a state complainant [] relies entirely on state law." Id.; See also 12 U.S.C. §§ 85-86. The Court further held that "[b]ecause §§ 85 and 86 [of the NBA] provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank." Id.

In this case, Plaintiff acknowledges that the debt in question was originated by a national bank. (Exhibit 2, ¶ 21). Nonetheless, Plaintiff asserts that the NBA does not apply here because Defendants are not a national bank. Specifically, Plaintiff argues that Defendants, as assignees of debt originated by a national bank, are not entitled to "the benefit of the federal exemption." (Exhibit 2, ¶ 22). However, as detailed in Point III of this brief, the courts have consistently held that the NBA pre-empts state law usury claims against *both national banks and assignees* of their receivables. See Krispin v. May Dep't Stores Co, 218 F.3d 919, 924 (8th Cir. 2000); Phipps v. Starkey, 417 F.3d 1006, 1011 (8th Cir. 2005); Munoz v. Pipestone Financial, LLC, 513 F. Supp. 2d 1076, 1079 (D. Minn. 2007); Hudson v. ACE Cash Express, Inc., 2002 U.S. Dist. LEXIS 11226, 13 (S.D. Ind. 2002).

In support of this motion, Defendants have submitted the Affidavit of Misael Moreno ("Affidavit"), a Process Manager for MCM. (See Exhibit 3). The Affidavit clearly establishes that Defendants were assignees of debt originated by a national bank. (SOF[2] ¶¶6, 10; Exhibit 3,

---

[2] Paragraph references preceded by "SOF" refer to Defendants' Statement of Undisputed Material Facts.

¶¶ 3-6; Exhibit 4). As such, the NBA clearly governs and Plaintiff's state-law usury claims fail as a matter of law. Furthermore, because the NBA provides the exclusive remedy for usury claims against a national bank, Plaintiff's entire Complaint must be dismissed for failure to allege a cause of action under the NBA. With the failure of the state law claims, the FDCPA claim must also be dismissed because it is based entirely on the preempted state law claims.

  B. <u>Because the NBA pre-empts all state-law usury claims, choice-of-law considerations are irrelevant to determining the interest rate Defendants were authorized to collect</u>

Because all of Plaintiff's claims are based on alleged usury violations in connection with credit extended by a national bank, the NBA—and not a state's choice-of-law jurisprudence—dictates which state's usury laws apply. See <u>Ben Nat'l Bank</u>, 539 U.S. at 10. In short, it is not necessary for the Court to determine whether New York law or Delaware law applies to the allegations in this case as the laws of either State are pre-empted by the NBA. <u>Id.</u>; <u>See also</u> 12 U.S.C. §§ 85-86.[3]

Under the NBA, a national bank is authorized to charge interest at the rate allowed by the laws of the State where the bank is located. <u>See</u> 12 U.S.C. § 85. Specifically, the NBA provides that a national bank may "take, receive, reserve, and charge [] interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more." 12 U.S.C. § 85.

---

[3] In any event, Plaintiff and FIA (and, by assignment, Defendants) agreed that Delaware law would govern their agreement:

"This Agreement is made in Delaware and we extend credit to you from Delaware. This Agreement is governed by the laws of the State of Delaware (without regard to its conflict of laws principles) and by any applicable federal laws." (Ex. A of Exhibit 3, Section 44).

4

FIA is an active national bank located in Delaware. (Leghorn Decl., ¶6; Exhibit 4). Further, the Affidavit of Misael Moreno establishes that FIA is the originator of Plaintiff's debt. (SOF ¶¶ 3-6; Exhibit 3, ¶ 4). As such, the interest rate allowed under Delaware law determines the rate that Defendants were authorized to collect on Plaintiff's debt. See 12 U.S.C. § 85. Indeed, the Supreme Court has stated that federal law "completely defines what constitutes the taking of usury by a national bank, referring to the state law only to determine the maximum permitted rate." Ben Nat'l Bank, 539 U.S. at 10 (quoting Evans v. National Bank of Savannah, 251 U.S. 108, 114 (1919)). Thus, in this case, while Delaware law prescribes the standard for determining the maximum permitted interest rate, it is important to note that this result is reached pursuant to the terms of the NBA as opposed to any choice-of-law principles.

Under Delaware law, a bank may charge periodic interest on credit card debt as follows:

> "A bank may charge and collect periodic interest under a revolving credit plan on outstanding unpaid indebtedness in the borrower's account under the plan at such daily, weekly, monthly, annual or other periodic percentage rate or rates as the agreement governing the plan provides or as established in the manner provided in the agreement governing the plan." 5 Del. C. § 943.

Further, under Delaware law, "if the agreement governing the revolving credit plan so provides," the interest rate "may vary in accordance with a schedule or formula" and may change "contingent upon the happening of any event or circumstance specified in the plan," including "the failure of the borrower to perform in accordance with the terms of the plan." 5 Del. C. § 944.

5

## III. Defendants, as Assignees of Debt Originated by a National Bank, Properly Sought to Collect Interest at the Rate Authorized Under the Laws of the State in which the Bank is Located

### A. Plaintiff has not alleged that Defendants Attempted to Collect a Rate of Interest that is Barred by Delaware Law

In Marquette Nat'l Bank v. First of Omaha Service Corp., the Supreme Court held that the NBA "authorizes a national bank based in one State to charge its out-of-state credit card customers [the] interest rate on unpaid balances allowed by its home State, [even] when that rate is greater than [the rate] permitted by the State of the bank's nonresident customers." Marquette National Bank v. First Omaha Service Corp., 439 U.S. 299, 301 (1978); See also Ben. Nat'l Bank v. Anderson, 539 U.S. 1, 10, supra. Under the NBA, a national bank is considered to be "located" in the State named in its organization certificate. Marquette National Bank, 439 U.S. at 310. Here, the originator of Plaintiff's debt, FIA, is a national bank organized and headquartered in Delaware. (SOF ¶ 6; Leghorn Decl. ¶6; Exhibit 4). As such, FIA was permitted to charge interest on its out-of-state customers' accounts at the rate permitted by Delaware law.

Here, Plaintiff opened a Bank of America credit card account on April 23, 2005. (SOF ¶ 3; Exhibit 3, ¶ 4; Ex. A, annexed to Exhibit 3). The terms and conditions of Plaintiff's account were periodically updated. (SOF ¶ 4; Exhibit 3, ¶ 6). The terms and conditions that were applicable to Plaintiff's account beginning October 19, 2006 are attached to Exhibit 3 as "Exhibit A". (SOF ¶ 4; Exhibit 3, ¶6; Ex. A, annexed to Exhibit 3). The October 19, 2006 update to Plaintiff's credit card Agreement consolidated Bank of America's credit card program into a single national bank, FIA Card Services, N.A. ("FIA") (SOF ¶ 5; Ex. A, annexed to Exhibit 3).

Plaintiff's August 14, 2006 account statement discloses a variable daily periodic interest rate of .08833%, which corresponds to an Annual Percentage Rate of 32.24%. (SOF ¶ 8; Ex. B, annexed to Exhibit 3). In addition, the August 14, 2006 account statement explicitly defines the circumstances that lead to Plaintiff being charged a "Default Rate" of interest (SOF ¶ 7; Ex. B, annexed to Exhibit 3).

Here, Plaintiff's Complaint does not contain any allegation that Defendants attempted to collect a rate of interest in excess of the terms set forth in the Agreement. Further, Plaintiff's Complaint does not contain any allegation that Defendants attempted to collect a rate of interest barred by Delaware law. Moreover, because FIA is located in Delaware, Delaware law sets the exclusive standard defining the rate of interest FIA is allowed to charge under the NBA. Marquette National Bank, 439 U.S. at 301; Ben Nat'l Bank, 539 U.S. at 10; 12 U.S.C. § 85. Thus, because Plaintiff's Complaint has failed to allege a single viable cause of action under the NBA, her Complaint must be dismissed as a matter of law.

    B.    As the Assignees of Debt Originated by a National Bank, Defendants Properly Attempted to Collect Interest at the Rate Allowed Under Delaware Law

Federal courts have consistently found that the NBA applies equally to national banks and assignees of their receivables. See Krispin, 218 F.3d at 924; Phipps v. Starkey, 417 F.3d 1006, 1011 (8th Cir. 2005); Munoz, 513 F. Supp. 2d at 1079; Hudson, 2002 U.S. Dist. LEXIS 11226 at 13. Indeed, the 8th Circuit has addressed this question twice, initially in Krispin, 218 F.3d at 924. In Krispin, the Plaintiffs had entered credit card agreements with a department store prior to 1996. Krispin, 218 F.3d at 921. In 1996, the department store sent letters to its customers announcing that "effective immediately" credit is being extended by the National Bank of Arizona ("the bank"). Id. The Court found that the 1996 assignment caused the bank,

and not the store, to become the "originator" of the Plaintiffs' accounts subsequent to that date. Id. at 923.

Following the assignment, the store purchased the bank's receivables and continued to remain active in collecting on outstanding debts. Id. at 923. Plaintiffs brought state-law usury causes of action against the store and contended that the NBA did not apply because the store was not a national bank. Id. at 924. However, the 8th Circuit held that the NBA nevertheless applied to the store, as an assignee of the bank's receivables. Id. Specifically, the Court stated that "it makes sense to look to the originating entity (the bank), and not the ongoing assignee (the store) in determining whether the NBA applies." Id. In reaching this decision, the Court cited to FDIC v. Lattimore Land Corp., which held, in the context of determining whether the NBA governs, that "the non-usurious character of a note should not change when the note changes hands"). Id., (quoting, FDIC v. Lattimore Land Corp., 656 F.2d 139, 147-149 (5th Cir. 1981)).

As cited above, numerous federal courts have followed the holding in Krispin. Moreover, the circumstances in this case directly mirror those considered by the 8th Circuit in determining whether the NBA applies. As such, the NBA clearly applies to Defendants Midland and MCM as assignees of a debt issued by a national bank. Therefore, Plaintiff's state-law usury claims are pre-empted by the NBA and her complaint must be dismissed in its entirety for failure to assert a cause of action under the NBA.

## CONCLUSION

Defendants are entitled to summary judgment because Plaintiff's FDCPA claim is entirely predicated on inapplicable state-law causes of action for usury against a national bank. The Supreme Court has held that the NBA pre-empts all state-law claims and provides the exclusive remedy for allegations of usury against a national bank. See Ben Nat'l Bank v. Anderson, 539 U.S. at 10. Further, numerous federal courts, including the 8th Circuit Court of

5368690v.1

Appeals, have held that the NBA applies equally to national banks and assignees of their receivables. See Krispin, 218 F.3d at 924, et al., supra. Here, Plaintiff has not alleged a single cause of action against Defendants under the NBA. This is fatal to Plaintiff's allegations of usury and requires dismissal of her Complaint.

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion for summary judgment, dismissing all claims against Defendants, with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
January 25, 2013

Respectfully Submitted,

WILSON, ELSER, MOSKOWITZ, EDLEMAN & DICKER LLP

By: _____
Thomas A. Leghorn
150 E. 42nd Street
New York, NY 10017
(212) 490-3000 (phone)
(212) 490-3038 (facsimile)
thomas.leghorn@wilsonelser.com
*Attorney for Defendants*