UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SALIHA MADDEN, *on behalf of herself and all others similarly situated,*

        Plaintiff,

vs.

MIDLAND FUNDING, LLC and
MIDLAND CREDIT MANAGMENT, INC.

        Defendants.

INDEX: 11-CV-8149 (CS)

**Hon. Cathy Seibel**

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT**

Daniel A. Schlanger
Kakalec & Schlanger, LLP
85 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 500-6114, ext. 101
Fax: (646) 612-7996
dschlanger@kakalec-schlanger.com

O. Randolph Bragg
Horwitz, Horwitz and Associates
25 E. Washington, Suite 900
Chicago, Illinois 60602
Tel: (312) 372-8822
Fax: (312) 372-1673
rand@horwitzlaw.com

*ATTORNEYS FOR PLAINTIFF*

December 20, 2016

# TABLE OF CONTENTS

I.   **Preliminary Statement** ....................................................................................................... 1

II.  **New York's Criminal Usury Law Applies To Post-Default Interest** ................................... 1

III. **The Bar Against Criminal Usury, Including Usury Stemming From Post-Default Interest, Represents A Fundamental Public Policy Of The State Of New York** ............... 5

IV.  **Defendants' Other Contentions Are Meritless** .......................................................... 7

V.   **Conclusion** ................................................................................................................ 8

**I.     Preliminary Statement**

Plaintiff submits this brief in response to the Court's request that she "explain why the Court should not dismiss her claims either because they fail under New York law regardless of the choice of law issue or because no public policy of New York would be implicated by application of Delaware law to a defaulted obligation." ECF Doc. 127.

In response to the first part of the Court's query: Choice of law aside, Plaintiff's claim succeeds under New York law because New York Penal Law §§ 190.40 and 190.42 – which cap interest at 25% per annum – apply to post-default interest. Defendants' contention to the contrary is predicated upon studied avoidance of several New York appellate cases and other authority explicitly holding that post-default interest, while not subject to the civil usury cap of 16%, is limited to 25% pursuant to Penal Law § 190.40, *et seq*.

With regard to the second part of the query: The bar on criminal usury represents a fundamental public policy of the State of New York, and the attempt to "contract around" the bar by means of a Delaware choice of law clause thus implicates New York's public policies.[1]

**II.    New York's Criminal Usury Law Applies To Post-Default Interest**

New York's Courts have repeatedly and explicitly held that New York's criminal usury cap applies even where an obligation is exempt from New York's civil usury laws.

In *Emery v. Fishmarket Inn of Granite Springs*, 173 A.D. 2d 765 (2d Dept. 1991), the Second Department interpreted a contract provision pursuant to which "following a default, the mortgagee shall be entitled to the highest interest permitted under the law". *Id*. at 765. The Court first noted that "*so long as an interest rate is not usurious* or does not constitute a penalty, the parties are . . . free to agree that the contract rate of interest shall increase upon default." *Id*.

---

[1] The Court required Defendants to explain "why, if Plaintiff's claims fail under New York law, the Court should even reach the choice of law issue". ECF Doc. 127. Defendants do not address this question and improperly use their supplemental brief to take another, failed swing at demonstrating that criminal usury does not apply to defaulted obligations under New York law.

1

at 767 (*emphasis added*). This formulation is a rejection of Defendants' position: If there was no rate of interest due upon default that could ever be usurious, the Second Department's limitation to interest rates that are "not usurious" would be meaningless. *Emery*'s subsequent discussion tracks Plaintiff's position, holding that where the civil usury laws do not apply, the highest interest rate after default is 25% pursuant to Section 190. *Id*. (holding that although the 16% cap under the "General obligations Law Sec. 5-501 and Banking Law Sec. 14-a. . . has no bearing on the obligation of the defendant mortgagors to pay the plaintiffs for the purchase of the premises which were the subject of the mortgage", the "'highest interest permitted under law' is 25% per annum.") (citing N.Y. Penal Law § 190).

Eight years later, the Second Department again found that where the civil usury laws did not apply, interest was capped at the criminal usury rate in *C&M Air Sys. V. Custom Land Dev. Group* II, 262 A.D. 2d 440, 440-441 (2d Dept. 1999) ("It is true that a purchase money mortgage is not considered a 'loan or forbearance' under the General Obligations Law, and the interest rate applicable thereto ordinarily is limited only by the criminal usury laws.").

*Nextbridge Arc Fund, LLC v. Vadodra Prop., LLC*, 31 Misc. 3d 1202(A) (N.Y. Sup. Ct. 2011) analyzed a note's post-default provisions to determine whether they were usurious. Citing Section 190.40 and *Emery*, the Court held that the "highest interest allowed by law is 25% per annum" and that, because the provision provided for post-default interest at a rate below 25%, "the note does not contain a criminally usurious default rate of interest." *Id*. at *7.

*T & S Chinatown Trading v. Lin China Buffet*, 1996 U.S. Dist. LEXIS 11867 (S.D.N.Y. Aug. 15, 1996) interpreted a contract clause calling for "default interest at the highest interest rate permitted under the applicable law", and held that "[u]nder New York law, the interest recoverable in the event of a default is capped by New York criminal usury law. The current

interest rate set by criminal usury law is 25% per year." *Id*. at *5 (citing *Bruce v. Martin,* 845 F. Supp. 146, 150 (S.D.N.Y. 1994) ("*Bruce I*"); *Emery;* and § 190.40, 190.42).

Similarly, *In re Liberty Warehouse Assocs. Ltd. Pshp.*, 220 B.R. 546, 551-552 (Bankr. S.D.N.Y. 1998) found that a default rate of more than 16% but less than 25% was lawful, again citing *Bruce I* and Section 190.40. *In re Route One West Windsor Ltd. Pshp.*, 225 B.R. 76, 90 (Bankr. D.N.J. 1998), likewise applied New York law and determined that, pursuant to *Emery* and Section 190, the default rate was capped under New York law at 25%.

Defendants ignore all of these precedents, attempting instead to rely on a footnote in *Manfra, Tordella & Brookes, Inc. v. Bunge*, 794 F.2d 61 (2d Cir. 1986). Defendants' position is without merit. *Manfra* held that "because the money owed . . . was due to losses on purchases of gold on an open credit account, it was neither a loan nor a forbearance as defined by New York courts interpreting Section 5-501." *Id*. at 63. This holding, relying on the distinction between "interest" on a loan and the "time price differential" in a "commercial buying arrangement" (*id*.), has no relevance to the case at bar.

Although *Manfra* stated in a footnote that "[i]n addition, the usury laws do not apply to defaulted obligations" (*id*. at n.3), Defendants' expansive interpretation of this footnote was rejected in *Bruce I*:

> The Plaintiffs contend that, if according to *Manfra* the New York usury laws do not apply to defaulted obligations, then Section 190 should not apply any more than Section 5-501. . . .The conclusion that the Plaintiffs derive from *Manfra* is unsupported by the case law. *Manfra* did not address the applicability of Section 190 to defaulted obligations. . . Under *Manfra*, Section 5-501 is inapplicable to the defaulted obligations under the Notes. As in *Emery*, this does not leave the interest rate without a discernable cap. Rather, the interest rate is "capped" by Section 190 at 25% per annum.

*Id*. at 11; *See Bruce v. Martin*, 1994 U.S. Dist. LEXIS 5465, *9 (S.D.N.Y. Apr. 27, 1994) (*Bruce II*) (reiterating that Section 190.40 imposed a 25% cap on post-default rates pursuant to *Emery*.)

Defendants' list of case authorities withers considerably when the distinction between applicability of the civil and criminal usury statutes is applied. *Llewellyn v. Asset Acceptance,*

*LLC*, 2015 U.S. Dist. Lixis 145437 (S.D.N.Y. Oct. 26, 2015)*; Prowley v. Hemar Ins. Corp. of Am.*, 2010 U.S. Dist. Lexis 45249 (S.D.N.Y. May 5, 2010); and *Schwartzbaum v.Emigrant Mortg. Co.*, 2010 US Dist. Lexis 60175 (S.D.N.Y. 2010) all address only civil usury and involve interest rates below the criminal usury rate.[2]

Moreover, Defendants' authorities consist entirely of federal district court citations to the footnote in *Manfra*. The question at hand, however, is a question of state law regarding which the Appellate Division has spoken. "As a federal court applying state law" this Court is "generally obliged to follow the state law decisions of state intermediate appellate courts." *Pentech Int'l, Inc. v. Wall Street Clearing Co.*, 983 F.2d 441, 445 (2d Cir. 1993). In the doubtful event that the footnote in *Manfra* was ever properly construed as implying that the criminal usury cap did not apply to post-default interest, subsequent state court appellate authority – e.g., *Emery*, 173 A.D. 2d at 767-768 and *C&M Air Sys.*, 262 A.D. at 440-441, *supra* – have since made clear that the cap applies.

The only decisions cited by Defendants squarely addressing post-default balances over the criminal usury rate are, in any event, distinguishable: None of these district court cases mention

---

[2]In *Llewellyn,* the borrower alleged a charge "in excess of 16%. . . in violation of New York's civil usury statute". The Court found that the two collectors had charged less than 16% interest, and held that the claim for violation of the civil usury laws regarding post-default interest failed, citing *Manfra*. *Prowley* likewise dealt with a purported violation of the civil usury rate only, and involved interest below the 16% cap. The Court held that plaintiff failed "to provide any facts that would give rise to a plausible claim of civil usury." *Id*. at *10. *Schwartzbaum* contains no reference to the criminal usury laws and again involves alleged post-default interest below the criminal usury cap. *Avila v. Riexinger & Assocs., LLC*, 2015 U.S. Dist. Lexis 48926 (E.D.N.Y. Apr. 14, 2015), cited by Defendants, dismissed a borrower's civil usury claim on grounds that the civil usury laws do not apply to post-default interested but stated in a footnote that, "[t]o the extent [the plaintiff] was also asserting a claim under the criminal usury law, New York Penal Law § 190.40 . . . that claim is also dismissed because there is no private cause of action under the criminal usury statute." *Id*. at n. 6 (citations omitted). This footnote is ambiguous, providing no support to Defendants: the Court may have understood that the criminal usury cap, unlike the civil cap, to apply to defaulted obligations and therefore been providing alternative (rather than additional) grounds for dismissal.

much less distinguish, *Emery* and progeny. Moreover, these cases all involve corporate borrowers subject to a significantly different statutory scheme. Unlike individuals, corporations are generally prohibited from making usury claims (N.Y. Gen. Oblig. Law § 5-521(1)) but, pursuant to an exception, are permitted under the civil usury code to "interpose[] a defense of criminal usury as described in section 190.40 of the penal law." § 5-521(3). In this context, there is some logic to finding that a corporation is bound by the civil usury code's limitations on post-default interest, as the defense, while referencing Section 190, is made under the civil code itself. Likewise, the statements in these cases that criminal usury can be asserted only as a defense are due to that express statutory limitation on corporations, set forth in § 5-521.

### III. The Bar Against Criminal Usury, Including Usury Stemming From Post-Default Interest, Represents A Fundamental Public Policy Of The State Of New York

This Court requested that Plaintiff "explain why the Court should not dismiss her claims. . . because no public policy of New York would be implicated by application of Delaware law to a defaulted obligation." ECF Doc. 127.

As set forth above, post-default interest is capped under New York's criminal usury statute at 25%. And as set forth in detail in Plaintiff's Opposition to Defendants' Renewed Motion For Summary judgment ("Opp To SJM") (ECF Doc. 116), the bar on usury represents a fundamental public policy of the State of New York. *Id*. at 5-13 (collecting authority, including *North American Bank, Ltd. v. Schulman*, 123 Misc. 2d 516, 520 (N.Y. County Ct. 1984) ("The policy underlying our State's usury laws is in fact of a fundamental nature"); *Culbert v. Rols Capital Co.*, 184 A.D. 2d 612 (App. Div. 1992); *Clever Ideas, Inc. v 999 Rest. Corp.*, 2007 N.Y. Misc. LEXIS 9248, *2-4 (N.Y. Sup. Ct. Oct. 12, 2007) (finding that "the policy underlying our State's usury laws is in fact of a fundamental nature."); and *Guerin v. New York Life Ins. Co.*, 271 A.D. 110, 116 (N.Y. App. Div. 1946) ("Usury is a question of supervening public policy.")).

Indeed, the fact that the conduct at issue here constitutes a felony under New York's Penal Law makes the public policy at issue even stronger than in cases involving civil usury. *See Electrical & Magneto Serv. Co. v. AMBAC Int'l Corp.*, 941 F.2d 660, 663 (8th Cir. 1991) (finding that a statute represented a fundamental public policy because the legislature made "a willful violation of statute" "a class D felony"; "the legislature would not allow a criminal law to be bypassed by the mere existence of a choice of law provision contained in a contract.")

*Bruce II*, held that post-default "[i]nterest in excess of 25% is forbidden by the Penal law of New York, because it is abhorrent to public policy." *Id*. at *8 (citing *Hammelburger v. Foursome Inn. Corp.*, 54 N.Y.2d 580, 595 (N.Y. 1981) (Cooke, J., concurring)). The Court further observed that the majority in *Hammelburger*, "took pains to point out that the waiver of the defense of criminal usury did not affect the State's authority to prosecute a usurer under Section 190.40" and concluded that "*Hammelburger* . . . indicates that, even if the defense of usury were not available with respect to defaulted obligations, interest on such obligations would be limited by the New York Penal Law." *Id*. at *7-8.

*943 Lexington Ave., Inc. v. Niarchos*, 83 Misc. 2d 803, 804 (N.Y. App. Term 1975) is also instructive. In *Niarchos*, a landlord sought a hefty surcharge on unpaid rent. Despite the fact that the surcharge was not subject to civil or criminal usury laws (there being no loan or interest), the Court found the public policy expressed in Section 190.40 so compelling that it refused to enforce the surcharge provision, holding that "while not technically interest," the charge was unenforceable when "[e]xamined in the light of the public policy expressed in section 190.40 of the Penal Law, which makes an interest charge of more than 25% a criminal offense."

The fundamental nature of New York's bar on criminally usurious post-default interest rates is further supported by the fact that the bar is protective in purpose and designed to mitigate the oppressive use of superior bargaining power – a purpose equally implicated by post- and pre-

6

default interest rates. Opp. to SJM at 10-12. Moreover, usury regulation in New York is long-standing, pre-dating statehood, and the purpose of § 190.40, *et seq*. was to provide additional protections (*id.* at 12-13; *Hammelburger* at 588-591), whereas Delaware has no usury cap at all. Defs. MOL for SJM (ECF Doc. 114) at 13; Opp. to SJM at 13-14.

In light of the foregoing, it is clear that New York's prohibition on criminal usury, including criminal usury involving post-default interest, constitutes a fundamental public policy.

### IV. Defendants' Other Contentions Are Meritless

Defendants also argue that Plaintiff's claims fail because "a plaintiff cannot enforce criminal statutes in a civil action," relying upon *American Express Co. v. Brown*, 392 F. Supp. 235 (SDNY 1975), in which the Court dismissed a usury defense on grounds that "the enforcement of New York state's criminal usury law is beyond my jurisdiction and. . . defendant lacks the power to personally enforce the criminal usury law of the state".

*Brown* is both inapposite and incorrect. The question for FDCPA purposes is not whether the criminal usury statute provides a private right of action or affirmative defense, but whether Defendants were legally entitled to the amounts they sought to collect. Specifically, Plaintiff here "contends that by attempting to collect interest at a rate higher than allowed by New York law, the defendants falsely represented the amount to which they were legally entitled in violation of the FDCPA, 15 U.S.C. §§ 1692e(2)(A), (5), (10), 1692f(1)." *Madden v. Midland Funding, LLC*, 786 F.3d 246, 254 (2d Cir. 2015); Am. Compl. ¶55(a) – (d).

This is a well-established theory of FDCPA liability. *See Tuttle v. Equifax Check Servs.*, 190 F.3d 9, 13 (2d Cir. 1999) ("If state law expressly prohibits service charges, [they] cannot be imposed even if the contract allows it [.]); *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) ("[E]very circuit court decision that has applied the "permitted by law" standard has asked simply whether state substantive law permitted the FDCPA defendant to collect the money that it

7

demanded."); *Lannan v. Levy & White*, 2016 U.S. Dist. LEXIS 66123, *25-28 * (D. Mass. May 11, 2016) ("[I]n wrongfully including prejudgment interest . . . [the collector] falsely represented the 'character, amount, or legal status' of Plaintiffs' debt.").

In sum, Plaintiff's FDCPA claim does not hinge on whether N.Y. Penal Law §190.40 may be asserted as a defense or a stand-alone claim, but rather on whether New York law makes it unlawful to collect post-default interest at a rate above 25%. It does, and Defendants are therefore liable under the FDCPA for unfair and deceptive collection practices. Plaintiff's N.Y.G.B.L. § 349 claim succeeds for the same reason.

Even with regard to claims brought under the usury statutes themselves, *Brown* is no longer good law, if it ever was. As the Court of Appeals subsequently stated in *Hammelburger*, "it constitutes no stretch of statutory intent or of the language of . . . the General Obligations Law to recognize a disqualification of the criminal usurer to recover any part of the money loaned, and a corresponding right of the borrower to get back whatever he has paid[.]" *Id*. at 591, n. 2. *Brown*'s statement regarding the supposed inability of either the Court or borrower to address criminal usury was further dismantled in *Szerdahelyi v. Harris*, 67 N.Y.2d 42, 48-49 (N.Y. 1986), which stated that the civil usury remedies were "no more than the implementation of a statutory expression of the familiar rule that illegal contracts, or those contrary to public policy, are unenforceable and that the courts will not recognize rights arising from them."[3]

**V.     Conclusion**

For the foregoing reasons, and the reasons set forth in Plaintiff's prior submissions, Defendants' motion for summary judgment should be denied in its entirely and Plaintiff's motion for class certification should be granted in its entirety.

---

[3] Other than *Brown*, Defendants' only citation on this point is to *Bruce I*. *Bruce I,* however, merely summarized *Brown* prior to holding that N.Y. Penal Law § 190.40 imposed a cap of 25% on post-default interest.

8

Date: December 20, 2016

Respectfully submitted,

*s/Daniel A. Schlanger*
Daniel A. Schlanger
Kakalec & Schlanger, LLP
85 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 500-6114, ext. 101
Fax: (646) 612-7996
dschlanger@kakalec-schlanger.com

O. Randolph Bragg
Horwitz, Horwitz and Associates
25 E. Washington, Suite 900
Chicago, Illinois 60602
Tel: (312) 372-8822
Fax: (312) 372-1673
rand@horwitzlaw.com

*ATTORNEYS FOR PLAINTIFF*