UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE MIDLAND FUNDING, LLC
INTEREST RATE LITIGATION

INDEX: 11-CV-8149 (CS) (LMS)

SECOND AMENDED
COMPLAINT

JURY DEMANDED HEREON

---

## I. INTRODUCTION

1.  This is a consumer class action brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices, and New York General Business Law § 349, which prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.

2.  Named plaintiffs Linda Taylor Gay, Marianne Norelli, Rocco Commisso and Galo Uribe, on behalf of themselves and all persons similarly situated, seek injunctive relief, declaratory judgment, actual, statutory and punitive damages against Defendant Midland Credit Management, Inc. and Defendant Midland Funding, LLC arising from Defendants' routine practice of charging, collecting and seeking to collect usurious rates of interest in excess of New York's criminal usury cap.

3.  In its decision dated February 27, 2017 ("the Order"), the Court certified the class described herein pursuant to both Fed. R. Civ. P. 23(b)(2) and (3) and with regard to the latter

(*i.e.* the damages class) certified two subclasses: a subclass relating to claims arising out of GBL violations from November 10, 2008 through the date of the Order, and a subclass arising out of FDCPA violations from November 10, 2010 through the date of the Order.

4. This Second Amended Complaint confirms the requested class to the Order.

5. The Court also previously granted leave for the undersigned class counsel to substitute in one or more named plaintiffs. ECF Docs. 155 and 162.

6. This Second Amended Complaint substitutes four new named plaintiffs into the action.

## II.  JURISDICTION

7. Subject matter jurisdiction of this Court arises under 28 U.S.C. §§ 1331, 1337, and 15 U.S.C. § 1692k(d), and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

## III.  VENUE

8. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Venue is also proper in this judicial district pursuant to 15 U.S.C. § 1692k(d), in that the Defendants transact business in this judicial district and many of the violations of the FDCPA and New York statutory law at issue in this litigation occurred in this judicial district.

## IV.  PARTIES

9. Plaintiff Linda Taylor Gay is an adult individual who has resided at all relevant times in Rochester, New York.

10. Ms. Gay is a "consumer" as defined in 15 U.S.C. § 1692a(3).

11. Plaintiff Galo Uribe is an adult individual currently residing in Huntersville, North Carolina who resided at all relevant times in Westchester County, New York.

12. Mr. Uribe is a "consumer" as defined in 15 U.S.C. § 1692a(3).

13. Plaintiff Rocco Commisso is an adult individual who has resided at all relevant times in Albany, New York.

14. Mr. Commisso is a "consumer" as defined in 15 U.S.C. § 1692a(3).

15. Plaintiff Marianne Norelli is an adult individual who has resided at all relevant times in East Northport, New York.

16. Ms. Norelli is a "consumer" as defined in 15 U.S.C. § 1692a(3).

17. Defendant Midland Funding, LLC (hereinafter "Midland") is a purchaser of debts in default with its primary place of business located in San Diego, California.

18. Midland is a debt buying entity that is a wholly owned subsidiary of Encore Capital Group, Inc. ("Encore") a publicly traded company that is among the largest buyers and collectors of defaulted credit card receivables in the United States.

19. Midland is a high volume purchaser of consumer debt.

20. Midland owns and, on its own or by and through its authorized agent and/or related entities, including Defendant Midland Credit Management, attempts to collect upon millions of defaulted consumer credit card receivables at any given time.

21. Midland – on its own or by and through its authorized agent and/or related entities, including Defendant Midland Credit Management, uses instrumentalities of interstate commerce and the mails in its business, the principal purpose of which is collection of debts.

22. Midland is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

23. Defendant Midland Credit Management, Inc. (hereinafter "MCM") is a collection agency with its primary place of business located in San Diego, California.

24. MCM, like Midland, is a wholly owned subsidiary of Encore, and acts as servicer of Midland's consumer debt portfolio. See Encore website, stating "If you are one of our consumers, you probably know us as Midland Credit Management (or MCM)." http://www.encorecapital.com/consumers

25. MCM services millions of Midland accounts at any given time.

26. MCM uses numerous instrumentalities of interstate commerce and the mails in its business, the principal purpose of which is the collection of debts.

27. MCM also regularly attempts to collect debts owed or due or asserted to be owed or due to Midland Funding.

28. MCM is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

## V. FACTUAL ALLEGATIONS

29. Each of the named plaintiffs owes or is alleged to owe Midland Funding for an unpaid personal, family or household obligation.

30. Defendant Midland Funding acquired each of these alleged obligations after purported default.

31. Defendant Midland Funding placed each of the named plaintiffs' alleged obligations with MCM for collection.

32. On or about March 28, 2014, Defendant MCM on behalf of Defendant Midland Funding sent or caused to be sent a letter to Named Plaintiff Linda Taylor Gay to collect on a debt allegedly originally due to CIT Bank, now allegedly due Midland Funding.

33.     The letter to Ms. Taylor Gay sought interest, post-assignment to Midland at a rate of 29.4% per annum and included a stated balance of $3,886.76, which was calculated by Midland based on said interest rate.

34.     Midland reported Ms. Taylor Gay's account to one or more credit reporting agencies and, in doing so, reported balances, including the balance set forth in the March 28, 2014 collection letter, that were calculated based on an interest rate, post-assignment, of 29.4%.

35.     On or about March 21, 2014, Defendant MCM on behalf of Defendant Midland Funding sent or caused to be sent a letter to Named Plaintiff Marianne Norelli to collect on a debt allegedly originally due to Bank of America, now allegedly due Midland Funding.

36.     The letter to Ms. Norelli sought interest, post-assignment to Midland at a rate of 27.24% per annum and included a stated balance of $15,194.39 which was calculated by Midland based on said interest rate.

37.     Midland reported Ms. Norelli's account to one or more credit reporting agencies and, in doing so, reported balances, including the balance set forth in the March 21, 2014 collection letter, that were calculated based on an interest rate, post-assignment, of 27.24%.

38.     On or about April 10, 2014, Defendant MCM on behalf of Defendant Midland Funding sent or caused to be sent a letter to Named Plaintiff Rocco Commisso to collect on a debt allegedly originally due to CIT Bank, now allegedly due Midland Funding.

39.     The letter to Mr. Commisso sought interest, post-assignment to Midland at a rate of 29.99% per annum and included a stated balance of $2,837.56, which was calculated by Midland based on said interest rate.

40. Midland reported Mr. Commisso's account to one or more credit reporting agencies and, in doing so, reported balances, including the balance set forth in the April 10, 2014 collection letter, that were calculated based on an interest rate, post-assignment, of 29.99%.

41. On or about March 31, 2011, Defendant MCM on behalf of Defendant Midland Funding sent or caused to be sent a letter to Named Plaintiff Galo Uribe to collect on a debt allegedly originally due to GE Money Bank, now allegedly due Midland Funding.

42. The letter to Mr. Uribe sought interest, post-assignment to Midland at a rate of 28.24% per annum and included a stated balance of $1309.68, which was calculated by Midland based on said interest rate.

43. Midland reported Mr. Uribe's account to one or more credit reporting agencies and, in doing so, reported balances, including the balance set forth in the March 31, 2011 collection letter, that were calculated based on an interest rate, post-assignment, of 28.24%.

44. New York Penal Law § 190.40 states that a "person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period."  Criminal usury in the second degree is a class E felony.

45. New York's criminal usury rate of 25% applies post-default.  Order at p. 15 (concluding that ". . . New York's criminal usury cap applies to prevent a creditor from collecting interest above 25% on a defaulted debt").

46. Although the original creditor for each named plaintiff's account may be exempt from New York's usury laws pursuant to the National Banking Act, 12 U.S.C. §85, the Defendants

here are not national banks, and are not exempt. ECF Doc. 87 (Opinion of USCA, Second Circuit at p. 2) ("We hold that nonnational bank entities are not entitled to protection under the National Bank Act from statelaw usury claims merely because they are assignees of a national bank.")

## VI.   DEFENDANTS' PRACTICES AND POLICIES

47. Until sometime after this litigation was filed and after each of the collection letters to named plaintiffs referenced above was sent by Defendants, it was the standard practice and policy of Defendants to charge, collect and attempt to collect interest in excess of the interest rate set by New York's usury laws, *inter alia*, by means of collection letters that falsely stated that the interest rate for an account was higher than the maximum amount that can be charged under New York's criminal usury laws, and that incorrectly calculated the "current balance" on the basis of the higher, unlawful interest rate.

48. During this period it was the standard practice and policy of Defendants to falsely represent the character, amount, or legal status of the debt by stating in written communications with consumers an interest rate for the account was higher than the maximum interest rate allowed by New York's criminal usury laws, and by calculating the "current balance" on the basis of the higher, unlawful interest rate.

49. During this period, it was the standard practice and policy of Defendants to threaten to take action that cannot legally be taken or that is not intended to be taken, *i.e.* charging interest in excess of the maximum interest rate allowed by New York's criminal usury laws.

50. During this period, it was the standard practice and policy of Defendants to collect or attempt to collect interest at a rate higher than permitted by law.

51. Such collection attempts included, *inter alia*, the sending of collection letters reflecting the unlawful interest rates and reflecting balances calculated based upon the unlawful interest rates, as well as continuous reporting to credit agencies of the unlawfully high rates and inflated balances that were, *inter alia*, set forth in Defendants' collection letters.

## VII.  CLASS RULE ALLEGATIONS

52. Pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, this action is brought as a class action.

53. The Court has previously certified and Plaintiff seeks relief on behalf of:

> a. A Rule 23(b)(2) injunctive and declaratory relief class comprising all persons residing in New York who were sent a letter by Defendants attempting to collect interest in excess of 25% per annum regarding debts incurred for personal, family, or household purposes, whose cardholder agreements: (i) purport to be governed by the law of a state that, like Delaware's, provides for no usury cap; or (ii) select no law other than New York. This class covers only claims arising out of GBL violations from November 10, 2008 through February 27, 2017.
>
> b. Rule 23(b)(3) damages class comprising all persons residing in New York who were sent a letter by Defendants attempting to collect interest in excess of 25% per annum regarding debts incurred for personal, family, or household purposes, whose cardholder agreements: (i) purport to be governed by the law of a

state that, like Delaware's, provides for no usury cap; or (ii) select no law other than New York.

54. The Rule 23(b) class comprises two subclasses: (a) for claims arising out of GBL violations from November 10, 2008 through the date of the Order; and (b) for claims arising out of FDCPA violations from November 10, 2010 through February 27, 2017.

55. Defendants have provided to Class Counsel a class list containing some 58,480 class members including each of the named plaintiffs listed herein.

56. As such, and as this Court previously found in the Order based on Defendants' prior estimate of 49,780 class members) the members of the class are so numerous that joinder of all parties is impracticable. Order at p. 28.

57. As this Court has already held, there are questions of law or fact common to the class, including whether Defendants' collection letters to class members (who by definition are alleged by Midland to have accounts that (i) purport to be governed by the law of a state that, like Delaware's, provides for no usury cap; or (ii) select no law other than New York") reflect an interest rate disallowed by New York Penal Law § 190.40 and are therefore actionable under the FDCPA and N.Y. GBL §349.

58. The named plaintiffs' claims are typical of the claims of the certified class. Specifically, each named plaintiff's claims arise from the same allegedly illegal debt collection attempts, and each class member makes similar legal arguments to prove Defendants' liability.

59. The named plaintiffs' claims are typical of the class members in that each alleges the same claims asserted on behalf of the class as a whole.

60. The named plaintiffs will fairly and adequately protect the interests of the class in that each has a personal desire to vindicate the rights of the class and has retained competent counsel experienced with FDCPA as well as other consumer litigation and class actions to represent the class. Order at pp. 34-35 (regarding adequacy of class counsel).

61. Prosecution of separate actions by individual class members creates risk of individual adjudications that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

62. Prosecution of separate actions by individual members of the class would create risk of varying individual adjudications, which would establish incompatible standards of conduct for defendants who are expected to oppose the class.

63. Questions of law and fact common to the class members predominate over any questions affecting only individual members, and a class action is superior to other methods available for the efficient adjudication of the controversy; the relief sought by all members of the class will be effective and appropriate for the entire class; all members of the class have a right to damages or other relief which may be readily computed in each case or otherwise readily determined.

64. Many of the persons with whom Defendants have dealt, or who were affected by their activities, may not be aware of their rights, or are not in a financial position to assert such rights readily. Because relegation of their claims to individual actions would result in an unreasonable multiplicity of suits and a corresponding burden on this and other courts, a class action is far superior to all other methods for a fair and efficient adjudication of this controversy.

65.     A class action is a superior method for the fair and efficient adjudication of this controversy.  Classwide damages are essential to induce defendants to comply with state and federal law.  The interest of class members in individually controlling the prosecution of separate claims against defendants is small because the maximum statutory damages on an individual are $1000 for violation of the FDCPA and actual damages, while significant in the aggregate are modest when calculated on a per class member basis.  Management of these class claims are likely to present significantly fewer difficulties than those presented in many class claims, e.g., for securities fraud.

66.     Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

67.     The class is readily ascertainable and, in fact, has already been ascertained, subject to confirmatory discovery.

68.     Specifically, following the Court's certification of the class set forth herein, Defendants' provided Class Counsel with a class list that included, *inter alia*, names and contact information for the class members as well as damages calculations for those class members from whom, according to Defendants' calculations, usurious interest has been collected.

**VIII.  CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")**
**15 USC § 1692 *et seq.***

69.     Plaintiffs repeat, reallege and incorporate by references all of the allegations contained in the foregoing paragraphs.

70. Congress enacted the Fair Debt Collection Practices Act to stop "the use of abusive, deceptive and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).  A debt collector may not "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  Included within this prohibition is the false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

71. The FDCPA prohibits false, deceptive or misleading conduct which includes the "use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. §1692e(10).

72. A debt collector may also not "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.e.

73. Defendants violated §1692e and § 1692f of the FDCPA by charging, collecting and/or seeking to collect interest at a usurious rate from the named plaintiffs and the other class members by means of collection letters and by reporting the usurious interest rates and balances set forth in those letters to one or more credit reporting agencies.

74. Specifically, and without limitation, the collection letters (and the related credit reporting):

> a. falsely represent the character, amount, or legal status of the debt., in violation of § 1692e(2)(A);
>
> b.  take or threaten to take action that cannot legally be taken or that is not intended to be taken (*i.e.* the charging and collection of usurious amounts) in violation of 1692e(5);

      c.   constitute a false and deceptive method of collecting or attempting a debt, in violation of § 1692e(10);

      d.   constitute an attempt to collect interest not expressly authorized by any agreement between consumers and Defendants or permitted by law, in violation of 1692f(1).

75.    As a direct and proximate result of Defendants' violations of the FDCPA, the named plaintiffs and the class have been injured and are entitled to statutory (and, in the case of some class members, actual) damages, attorney's fees and costs, as well as declaratory judgment.

## SECOND CAUSE OF ACTION
## NEW YORK GENERAL BUSINES LAW § 349 ("NYGBL § 349")

76.    Plaintiffs repeat, re-allege and incorporate by reference the foregoing paragraphs.

77.    Defendants' collection and attempted collection of usurious amounts, including but not limited to its representations to consumers that it is entitled to collect such amounts or that such interest is "accruing" and inclusion of such interest in collection letters, balance statements and related credit reports, constitutes a deceptive business practice in violation of NYGBL § 349.

78.    These acts were committed in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of §349 independent of whether it also constituted a violation of any other law.

79.    These acts are consumer-oriented, involving deceptive representations made in form/standardized collection letters and related credit reporting. The violations alleged herein are recurring and have a broad impact upon the public.

80.    Defendants have sent at least 58,480 class members one or more violative letters.

81.     The inflated interest rates and balances set forth on said letters were also reported by Defendants to one or more credit bureaus.

82.     The overstatements of balance and interest in standardized correspondence sent to large numbers of consumers and the reporting to the credit bureaus of same, as described herein, was part of a policy and practice that was designed and had the effect of unlawfully increasing Defendants' profits, and was both willful and knowing.

83.     Defendants' deceptive acts, by their nature, involve a material misrepresentation of the interest chargeable and accruing on its accounts.

84.     As a result of these violations of NYGBL §349, named plaintiffs and the class have suffered cognizable harm, *inter alia*, in the form of overstated balances and interest rates, inaccurate credit reporting of their balances and interest rates and, in the case of class members who paid usurious interest, overpayment.

85.     With regard to those class members who paid usurious interest, the named plaintiffs and other class members are entitled to a declaration that Defendants' practices as set forth herein are unlawful, adjustment of their stated interest rates to rates not exceeding 25%, adjustment of their balances to balances calculated upon interest rates not exceeding 25%, correction of their credit reports to reflect these adjustments, the greater of their overpayment or $50, punitive damages of three times that amount up to $1,000 per class member, attorney's fees and costs.

86.     With regard to those class members who did not pay usurious interest but from whom Defendants sought to collect it by means of collection letters and related credit reporting, the named plaintiffs and other class members are entitled to a declaration that Defendants' practices as set forth herein are unlawful, adjustment of their stated interest rates to rates not exceeding

25%, adjustment of their balances to balances calculated upon interest rates not exceeding 25%, correction of their credit reports to reflect these adjustments, $50 (fifty dollars), punitive damages of three times that amount (i.e. $150 (one hundred and fifty dollars)) per class member, attorney's fees and costs.

87. Plaintiffs are also entitled to and request a permanent injunction barring Defendants' practice of charging and attempting to charge interest in excess of New York's criminal usury rate.

## IX.  REQUEST FOR RELIEF

WHEREFORE the named plaintiffs, on behalf of themselves and all others similarly situated, request that judgment be entered against Defendants Midland Funding, LLC and Midland Credit Management, Inc. and that the Court:

    A. award all relief previously set forth in the Order, *i.e.* certification of 23(b)(2) and 23(b)(3) classes and subclasses as described herein and designation of the undersigned as class counsel;

    B. appoint the named plaintiffs as class representatives;

    C. declare Defendants' practice of collecting and/or attempting to collect post-assignment interest in excess of 25% to be unlawful;

    D. enter a permanent injunction barring Defendants' practice of charging and/or attempting to charge interest in excess of New York's criminal usury laws and order Midland to adjust all class members' interest rates to a rate not to exceed 25% and to adjust all class members' balances to balances calculated on the

      basis of a post-assignment interest rate of no more than 25%; and to correct all related credit reporting to reflect these adjustments;

E. award statutory damages to all 23(b)(3) FDCPA subclass members in an amount based upon Defendants' aggregated net worth of $1,000,000 and statutory damages to each named plaintiff of $1,000, actual damages to all 23(b)(3) class members who paid usurious interest in the amount of the usurious interest paid, attorney's fees, and costs, pursuant to 15 U.S.C. § 1692k;

F. award actual damages in the amount of usurious interest paid or $50 whichever is greater, punitive damages up to $1000.00 per class member, attorney's fees and costs, pursuant to NYGBL § 349;

G. award attorney's fees, litigation expenses, and costs;

H. award each named plaintiff, in addition to all damages and relief set forth herein, a service award in the maximum amount allowable under existing law;

I. award all applicable pre- and post-judgment interest;

J. award such other or further relief as the Court deems appropriate.

## X. JURY DEMAND

The named plaintiffs, on behalf of themselves and the class, demand trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure of all issues triable of right by a jury.

Dated: November 1, 2017


*[signature blocks on next page]*

November 1, 2017

                        Respectfully Submitted,

                        */s/Daniel A. Schlanger*
                        Daniel A. Schlanger
                        Kakalec & Schlanger, LLP
                        85 Broad Street, 18th Floor
                        New York, NY 10004
                        T. 212-500-6114
                        F. 646-612-6996
                        dschlanger@kakalec-schlanger.com

                        O. Randolph Bragg
                        (*admitted pro hac vice*)
                        Horwitz, Horwitz and Associates, Ltd.
                        25 E. Washington, Suite 900
                        Chicago, Illinois 60602
                        T. 312-372-8822
                        F. 312-372-1673
                        rand@horwitzlaw.com


                        *CLASS COUNSEL*