**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE MIDLAND FUNDING, LLC INTEREST RATE LITIGATION | Civil Action No.: 11-cv-8149 (LMS) |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Daniel A. Schlanger
Evan S. Rothfarb
Schlanger Law Group LLP
9 East 40th St., Suite 1300
New York, NY 10016
T. 212-500-6114
F. 646-612-6996
dschlanger@consumerprotection.net
erothfarb@consumerprotection.net

O. Randolph Bragg
*admitted pro hac vice*
Horwitz, Horwitz and Associates, Ltd.
25 E. Washington, Suite 900
Chicago, Illinois 60602
(312) 372-8822
(312) 372-1673 (Facsimile)
E-mail: rand@horwitzlaw.com

*Counsel for Linda Taylor Gay, Marianne Norelli, Galo Uribe,
Rocco Commisso, and the Putative Class*

**INTRODUCTION**

Plaintiffs Linda Taylor Gay, Marianne Norelli, Galo Uribe, and Rocco Commisso, respectfully submit this Memorandum of Law in Support of the parties' joint motion for an Order (1) preliminarily approving the Settlement Agreement and Release of Claims executed by the parties on or about February 22, 2019, (hereinafter, "Settlement Agreement," filed contemporaneously with this memorandum and attached as "Exhibit 1" to the Declaration of Daniel A. Schlanger in Support of Joint Motion for Preliminary Approval of Class Settlement, including all exhibit subparts) as fair, reasonable, adequate, and in the best interests of the Settlement Class; (2) certifying the putative Settlement Class (as defined in the Settlement Agreement and pending final approval by the Court); (3) approving the Notice and the Notice Plan as contained within the Settlement Agreement; (4) setting a date by which Notice must be sent; (5) appointing Linda Taylor Gay, Marianne Norelli, Galo Uribe, and Rocco Commisso as Class Representatives; (6) appointing attorneys Daniel A. Schlanger, Esq. (of Schlanger Law Group LLP) and O. Randolph Bragg, Esq. (of Horwitz, Horwitz & Associates) as Class Counsel; (7) scheduling a final approval hearing under Federal Rule of Civil Procedure 23(c)(2) (the "Final Fairness Hearing") after the Notice period has expired so that the Court can consider any objections to the settlement, opt outs, and approve the parties' agreement regarding payment of Class Counsel's attorneys' fees and costs and payment of an incentive award to the Class Representatives.

**I.      NATURE OF THE CASE**

      **A.      Facts Underlying this Class Action**

Plaintiffs and the class are New York consumers from whom Defendants sought to collect on accounts originated by national banks and purportedly assigned to Defendants.

1

Plaintiffs have asserted that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and New York General Business Law ("GBL") § 349 by attempting to collect interest on Plaintiffs' and Class Members' accounts in excess of the 25% interest limit set forth in New York's criminal usury laws. *See* N.Y. Penal Law § 190.40. *See* Second Amended Complaint; ECF 172 at ¶¶29-51.

Defendants have denied all liability and contend that they did not violate the law or engage in any wrongful or unlawful conduct. ECF 174.

### B.  Procedural and Litigation History

This action was commenced in November of 2011, ECF 1. The parties have litigated this case extensively over the course of seven-plus years. The most salient points regarding the litigation's involved procedural history are as follows:

An amended complaint was filed in May of 2012. ECF 13.

Mediation in November of 2012 did not result in a settlement and the parties engaged in expansive paper discovery culminating in the filing of cross-motions for class certification and summary judgment. *See* ECFs 25, 40, 42, 46, 48, and 56.

The original Plaintiff also moved to strike a Rule 68 Offer of Judgment, an issue that was likewise fully briefed by the parties. ECFs 35, 41, and 50.

In a September 30, 2013 bench ruling, the Court denied all parties' motions. Specifically, the Court held that while certain issues particular to the original named plaintiff remained, the National Banking Act preempted Plaintiff's class claims. ECF 64, Transcript at 22. The Court denied the Motion to Strike the Offer of Judgment as premature. *Id.* at 4. Plaintiff sought interlocutory appeal and was denied. ECF 67 and 70.

2

On May 30, 2014, the parties entered into a Stipulation for Entry of Judgment for Defendants for Purpose of Appeal. "This stipulation disposed of the two genuine disputes of material fact identified by the [this Court], and provided that 'a final, appealable judgment in favor of Defendants is appropriate.' [This Court] 'so ordered' the Stipulation for Entry of Judgment." *Madden v. Midland Funding, LLC*, 786 F.3d 246, 249 (2d Cir. 2015).

By decision dated May 22, 2015, the U.S. Court of Appeals for the Second Circuit reversed the Court's September 30, 2013 bench ruling. *Madden*, 786 F.3d at 255. Defendants' subsequent motion for reconsideration and/or re-argument *en banc* was denied.

Defendants petitioned the U.S. Supreme Court for certiorari, which Plaintiff opposed. Numerous Amicus Curiae submitted briefs and the Supreme Court requested briefing from the U.S. Solicitor General. Accordingly, the parties submitted briefs to the U.S. Solicitor General and – at the request of the Solicitor – met with the Solicitor and representatives of various relevant agencies in Washington, D.C. to discuss the issues raised in Defendants' petition.

Following the Supreme Court's June 27, 2016 denial of certiorari, the parties filed and fully briefed renewed cross motions for class certification and summary judgment, which motions centered on various issues that the Second Circuit had declined to reach, or which were otherwise unaddressed on the appeal. ECFs 98, 99, 112, 116, 119, 120, 123, 128, and 129.

By Order dated February 27, 2017, the Court granted Plaintiff's motion for class certification with certain adjustments to the proposed class, granted Defendants' motion for summary judgment on Plaintiff's state law usury claims, but denied summary judgment on Plaintiff's FDCPA and GBL § 349 claims. ECF 133. In the Order, the Court certified the following classes:

    1.    A Rule 23(b)(2) injunctive and declaratory relief class comprising all persons residing in New York who were sent a letter by Defendants

> attempting to collect interest in excess of 25% per annum regarding debts incurred for personal, family, or household purposes, whose cardholder agreements: (i) purport to be governed by the law of a state that, like Delaware's, provides for no usury cap; or (ii) select no law other than New York. This class covers only claims arising out of GBL violations from November 10, 2008 through [February 27, 2017].
>
> 2. A Rule 23(b)(3) damages class comprising all persons residing in New York who were sent a letter by Defendants attempting to collect interest in excess of 25% per annum regarding debts incurred for personal, family, or household purposes, whose cardholder agreements: (i) purport to be governed by the law of a state that, like Delaware's, provides for no usury cap; or (ii) select no law other than New York. This class comprises two subclasses: (a) for claims arising out of GBL violations from November 10, 2008 through [February 27, 2017]; and (b) for claims arising out of FDCPA violations from November 10, 2010 through [February 27, 2017].

ECF 133 at 43.

On June 19, 2017, the Court granted Class Counsel leave to name a substitute plaintiff(s), ECF 155, which Class Counsel accomplished by filing the Second Amended Complaint. ECF 172.

After the Court granted class certification, the parties engaged in extensive additional discovery focused on identifying the class members and generating the Class List with precision. This process involved the collection of data regarding each of the over 58,000 class members' account histories (the "Data Compilation"), sampling of the underlying collection files to ensure accuracy of the compiled information, and multiple depositions of Defendants' employees with regard to the methodologies used to identify class members and compile relevant information regarding each account.

Conducting this discovery was not seamless. The parties negotiated stipulations when they could agree. When they could not agree, the parties convened numerous meet and confers, drafted and submitted letter briefs, and attended conferences with the Court.

The parties negotiated a detailed class notice plan.  These negotiations included good faith meet and confers as well as briefing on unresolved issues.  *See* ECF 193 and 200 (Motion to Approve Class Notice Plan and Defendants' Opposition).

Settlement negotiations were no less involved.  The parties exchanged multiple oral and written proposals and attended numerous meet and confers.  At the parties' request, the Court held three separate settlement conferences in July and October of 2018.  At the end of the third settlement conference, the parties reached their settlement in principle.  *See* ECF Minute Entry for October 30, 2018.

The case was referred for all purposes to the Magistrate Judge on consent of the parties by Order dated December 11, 2018.  ECF 205.

The settlement in principle notwithstanding, the parties continued to negotiate the terms of the written settlement agreement, which negotiations included, again, extensive back and forth between the parties' counsel, including not only numerous drafts of each settlement document, but also multiple meet and confers, extensive email correspondence, correspondence, etc.  Declaration of Daniel A. Schlanger in Support of Joint Motion for Preliminary Approval of Class Settlement ("Schlanger Declaration") at ¶¶4-15.  This phase of the litigation also included negotiations with and agreement upon the settlement administrator.  *Id*. at ¶11.   The Settlement Agreement was fully executed on February 22, 2019.  ECF 212; Schlanger Declaration at ¶12.

## II.     THE SETTLEMENT CLASS & CLASS RELIEF

### A.     The Class Definition

Consistent with the Court's February 27, 2017 Order, ECF 133, the parties seek approval of a Settlement Class defined as follows:

> all persons residing in New York who were sent a letter by Defendants attempting to collect interest in excess of 25% per annum regarding debts incurred for personal, family,

or household purposes, whose cardholder agreements: (i) purport to be governed by the law of a state that, like Delaware's, provides for no usury cap; or (ii) select no law other than New York. This class comprises two subclasses: (a) for claims arising out of GBL violations from November 10, 2008 through [February 27, 2017]; and (b) for claims arising out of FDCPA violations from November 10, 2010 through [February 27, 2017].

Settlement Agreement at ¶11(a); *see also* ECF 133 at 27.

The Settlement Class excludes any person whose letter from Defendants relates to a debt that was discharged pursuant to Chapter 7 of the United States Bankruptcy Code.  Settlement Agreement at ¶11(b).[1]

### B. Terms of the Proposed Settlement

The settlement agreement provides for three main forms of relief to the Class, all of which are explained in detail below:

- Monetary Relief totaling $555,000.00;

- Balance Reduction Relief totaling $9,250,000.00 of credits available to the Class; and

- Ongoing compliance of Defendants' policies and practices with applicable law regarding collection of interest on settlement class member accounts.

Specifically, the Settlement Agreement provides as follows:

(1) <u>FDCPA Subclass Relief</u>:   Settlement Class members who are members of the FDCPA Subclass members shall be entitled to submit a claim for either Monetary Relief or a Balance Reduction (whichever the consumer prefers), to be indicated by the consumer on the claim form.  With regard to members of this subclass who submit a claim and opt for Monetary Relief, $297,233.00 of the Settlement Fund shall be available for these payments.  The funds shall be distributed pro-rata to those class members who file a claim and opt for Monetary Relief rather than a Balance Reduction.  With regard to members of this subclass who submit a claim and opt for balance reduction, see "Balance Reduction Relief," below.

(2) <u>GBL Subclass Relief</u>:   Settlement Class members who are members of the GBL Subclass members but not the FDCPA Subclass shall be entitled to submit a claim

---

[1] Pursuant to the Settlement Agreement, Defendants have identified 329 otherwise eligible individuals who have filed for Chapter 7 bankruptcy.  Settlement Agreement at ¶13(b).  Under the terms of the Settlement Agreement, Class Counsel will confirm which of those individuals received a discharge within 21 days of the filing of the parties' motion for preliminary approval.  *Id*.

6

for either Monetary Relief or a Balance Reduction (whichever the consumer prefers). With regard to members of this subclass who submit a claim opting for Monetary Relief, $118,392.00 of the Settlement Fund shall be available for these payments. The funds shall be distributed pro-rata to those class members who file a claim and opt for Monetary Relief rather than a Balance Reduction. Payments to Settlement Class members who are members of the GBL Subclass members but not the FDCPA Subclass made under this subprovision are capped at $50.00 per person. If, based on the claims rate and per person cap, the total amount payable under this provision is less than $118,392.00, the excess shall "spill over" to the Supplemental Fund for Settlement Class Members Who Paid in Excess Of 25% Interest, and be added to the $139,375.00 available to those qualifying for a supplemental payment, as set forth below. With regard to members of this subclass who submit a claim and opt for balance reduction, see "Balance Reduction Relief," below.

(3) <u>Supplemental Fund For Settlement Class Members Who Paid In Excess Of 25% Interest ("Supplemental Fund")</u>: In addition to all other relief set forth in this Settlement Agreement, Settlement Class Members who paid Defendants interest in excess of 25% per annum, as reflected in the Class List, and who submit a claim shall also receive a pro rata share of a fund consisting of $139,375.00 (absent any spillover from other funds as set forth herein), capped at $320.00 per Settlement Class Member. If, based on the claims rate and per person cap, the total amount payable under this provision is less than $139,375.00 (plus any "spill over" from the GBL fund), the excess shall be added to the amount available to FDCPA Subclass members pursuant to 15(b)(1) of the Settlement Agreement.

(4) <u>Balance Adjustment Relief</u>:

  i. Defendants shall establish a credit pool of $9,250,000.00 ("$9.25M") for the benefit of the Class. These credits shall be available to reduce the balances of those class members who file a claim and opt for Balance Adjustment Relief. Credits shall be allocated pro-rata up to the amount of each class member's individual account balance. No refunds shall be issued to any Settlement Class Member whose balances are exhausted by the application of the credit pool.

  ii. To the extent those claimants opting for balance adjustments do not exhaust the balance credit pool of $9.25M, any remaining balance credits in the pool shall be applied pro rata to the balances of the class members who filed a claim for monetary relief.

  iii. Regarding Settlement Class Members with Current Purported Balances of $100.00 or less: In addition to the credit pool of $9.25M, Defendants shall

7

      adjust the balance of any Settlement Class Member who is alleged to owe $100.00 or less to reflect a zero balance.

   iv.  No consumer who has a balance of zero, pursuant to paragraph 16(b)(4)(iii) of the Settlement Agreement or otherwise, shall be offered the option of a balance adjustment in lieu of monetary relief. No refunds shall be issued to Settlement Class Members that have zero balances.

   v.  To the extent that the credit pool of $9.25M is not exhausted using the methodology described above, any remaining balance shall be credited pro rata to the Settlement Class as a whole. No refunds shall be issued to Settlement Class Members that have zero balances.

Settlement Agreement at ¶¶15(a) and (b).

  Defendants have also "warrant[ed] and represent[ed] that that they will comply with all laws, regulations and case law regarding the collection of interest, including those related to the application and or attempted collection of usurious interest, on class member accounts, and all accounts of New York residents more generally." *Id.* at ¶15(c)

## C. ANTICIPATED RELIEF PER CLAIMANT

  Class members who file claims will receive meaningful relief under this settlement, even if the rate of claims participation is significantly high.

  Specifically, even at a claims rate of 10-20%, FDCPA subclass members who choose cash relief will receive approximately $58.00 - $116.00 each. Schlanger Declaration at ¶22.[2]

---

[2] As noted in the attached Declaration, the estimates regarding the cash relief and balance adjustments available to each claimant rely on certain reasonable assumptions about claims participation in addition to assumptions regarding the claims rate. *See* Schlanger Declaration at 22 n.3. Courts considering class settlements, even with significantly smaller participation rates, have granted final approval so long as the notice was adequate. *See In re Serzone Prod. Liab. Litig.*, 231 F.R.D. 221, 235 (S.D.W. Va. 2005) (concluding that a claims rate of 6,524 claimants out of a settlement class that could have potentially included millions did not demonstrate the inadequacy of the notice, noting that "many factors contribute to the claims response rate," and observing that "claims response levels will tend to vary with the circumstances, types of class notices employed, and size of individual claims involved in each case); *Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.,* 758 F.2d 86, 92–93 (3d Cir. 1985) (holding that where defendant engaged in customary and court approved notice procedure, the response rate was not determinative of the adequacy of the class notice); *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 296 (E.D. Mich. 2017), *appeal dismissed,* No. 17-2139, 2017 WL 8236039 (6th Cir. Oct. 11, 2017) (overruling the objection that the "claims rate of nearly 150,000 claimants out of millions of consumers represents a 'clear failure' of the notice program.").

8

At these rates of claims participation, GBL subclass members who choose cash relief will likely receive $50.00 each. Schlanger Declaration at ¶23.

Class members who choose balance adjustments will, at these claims rates, likely receive balance adjustments of between $1,920 and $5,250. Schlanger Declaration at ¶24. It is worth noting in this regard that some 14,682 of the 58,479 class members (*i.e.* 25.1 percent) have stated balances of between $100 and $2,000 and 35,162 of the 58,479 class members (i.e. 60.1 percent) have stated balances between $100 and $5,000.00.[3] Schlanger Declaration at ¶25. In other words, a significant percentage of the claimants choosing the balance adjustment option will be able to use this option to close out their balances entirely.

The 7,842 class members who made overpayments of interest will, in addition to all other relief, be eligible for an additional cash payment. Schlanger Declaration at ¶27. At a claims rate of 10-20%, these class members are likely to receive an additional $118.07 - $282.42. Schlanger Declaration at ¶31. The average (mean) amount of overpayment of interest by those class members who overpaid is approximately $58.00. Schlanger Declaration at ¶30.

### D. RELIEF TO THE NAMED PLAINTIFFS

Pursuant to the Settlement Agreement, each of the four named plaintiffs will receive $5,000 and adjustment of his or her stated account balance to zero in recognition of their efforts on behalf of the class. Schlanger Declaration at ¶38.

---

[3] Class members with balances of $100 or less will, as part of the settlement have their balances adjusted to zero and will, accordingly, will be eligible for only cash relief (i.e., class members with de minimus balances will not forego cash relief in order to close out their balance). Settlement Agreement at ¶15(4)(b)(iii-iv).

**ARGUMENT**

**I.     THE SETTLEMENT CLASS HAS EFFECTIVELY ALREADY BEEN CERTIFIED**

With one minor exception relating to a small number of consumers whose loans were discharged in Chapter 7 bankruptcy proceedings described *supra*, the proposed settlement class definition is identical to the current class definition, which this Court certified on February 27, 2017. ECF 133 at 43. As such, the Settlement Class is effectively certified already and no developments in the case or applicable case law have occurred that should alter the Court's findings.

Specifically, the Court previously examined the issue of Rule 23 certification in detail and concluded in the context of a contested motion for class certification that all Rule 23 requirements (*e.g.* numerosity, commonality, typicality, adequacy of the named plaintiff and class counsel, etc.) had been met. ECF 133 at 25-43. Accordingly, with the exception of the issue of the current Representative Plaintiffs' adequacy, Plaintiffs will not address each requirement here, but rather incorporates by reference the previous class certification papers and this Court's findings regarding same. *See id.*

**II.    PLAINTIFFS ARE ADEQUATE CLASS REPRESENTATIVES.**

The current Representative Plaintiffs, Linda Taylor Gay, Marianne Norelli, Galo Uribe, and Rocco Commisso were substituted into this matter as a result of the Court's June 19, 2017 Order and the Second Amended Complaint. ECFs 155 and 172. There is no dispute that each Representative Plaintiff is a class member. Indeed, all were disclosed on the Class List and in the Data Compilation prior to substitution. Schlanger Declaration at ¶33. Nor is there any antagonism between Representative Plaintiffs' claims and those of the proposed settlement class.

10

Each Representative Plaintiff has been involved in the litigation providing discovery responses, keeping appraised of litigation developments including, *inter alia*, discovery disputes, merits issues; and consulting with Class Counsel multiple times regarding settlement.  Schlanger Declaration at ¶¶32-38.  Each Representative Plaintiff has approved the proposed settlement. Schlanger Declaration at ¶30.

 In short, the Representative Plaintiffs are clearly adequate.

## III.     THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED.

"Preliminary approval . . . is the first step in the settlement process.  It simply allows review of the proposed settlement within a range of reasonableness and notice to issue to all members of the class . . . to object or to opt-out of the settlement." *Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 5:15-cv-00441, Dkt. No. 39 at 3 (N.D.N.Y. Feb. 8, 2016).  "To grant preliminary approval, the court need only find that there is probable cause to submit the settlement to class members and hold a full-scale hearing as to its fairness." *Torres v. Gristede's Operating Corp.*, 2010 U.S. Dist. LEXIS 75362, at *11 (S.D.N.Y., June 1, 2010).

Courts are guided by the Second Circuit's recognition that public policy favors the settlement of class actions. *See Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 328 (S.D.N.Y. 2005) ("There is a strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy.") (internal citations omitted), *aff'd in part and vacated in part*, 443 F.3d 253 (2nd Cir. 2005).  "Moreover, a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.*  "Judges should not substitute their own judgments as to optimal

11

settlement terms for the judgment of the litigants and their counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982).

A brief examination of the proposed settlement, using the factors laid out by the Second Circuit for evaluating the substantive fairness of a class action settlement in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), demonstrates that the Court should preliminarily approve the Settlement.

### A. The complexity, expense, and likely duration of the litigation.

Although this litigation is now entering its eighth year, the case is potentially several years from its conclusion. Absent settlement, the parties anticipate filing dispositive pretrial motions. Defendants have indicated that absent settlement they intend to appeal the Court's prior orders as well as any adverse trial result and, if necessary, file a second petition for *certiorari* with the Supreme Court of the United States.

Because the case involves state law questions not addressed to date by the New York Court of Appeals, it is possible that post trial litigation will include attempts by one or both parties to have certain questions certified to the New York Court of Appeals.

Simply put, the proposed settlement forecloses a realistic possibility of several more years of complex and expensive litigation.

### B. The stage of the proceedings and the amount of discovery completed.

This matter has been intensely litigated including, *inter alia*, all merits and class discovery, motions for summary judgment and class certification, appeals, briefing regarding petitions for *en banc* review; *certiorari* related litigation (including briefing before the U.S. Supreme Court and briefing and advocacy presented to the Solicitor General), multiple appearances before the Honorable Cathy Seibel and the Honorable Lisa M. Smith regarding a

wide variety of substantive and procedural issues, discovery disputes and briefing, multiple complex, negotiated stipulations, renewed motions for summary judgment and class certification, and extended, intensive settlement negotiations including three separate settlement conferences with the Court.

As a result of these years of litigation, including the completion of class and merits discovery, the parties and their counsel are fully cognizant of the relative strengths and weaknesses of various claims and defenses, and the risks and potential outcomes absent settlement.

**C.    The risks of establishing liability and the risks of establishing damages; the risks of maintaining the class action through the trial; and the ability of Defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.**

Notwithstanding certification of the Class and denial of Defendants' renewed motion for summary judgment on Plaintiffs' FDCPA and GBL § 349 claims, Plaintiffs still face substantial risks in establishing liability and damages. As discussed previously, Defendants have indicated that absent settlement they intend to file dispositive motions, appeals, *certiorari* petitions, *etc.*, any one of which could result in reversal of a favorable judgment and no recovery to the Class.

Evaluated against these risks, the settlement is an excellent result for the Class.

For example, the FDCPA places a cap on statutory damages of the lesser of one percent of a defendant's net worth or $500,000.00. 15 U.S.C. § 1692k(a)(2)(B).[4]

Although the cap serves as the maximum possible amount recoverable against a defendant, courts may award less than the statutory maximum based on "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the

---

[4] *See* ECF 154, filed under seal.

13

resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." 15 U.S.C. § 1692k(2)(b)(1). Given the nature of the alleged violations and the fact that Defendants, many other debt collectors, this Honorable Court, and even some financial regulators understood the conduct to be lawful at the time it occurred, the Court could easily determine that an award well below the statutory maximum was warranted.

Here, of the 58,479 class members only 7,842 paid in excess of 25% in the form of interest overpayments. As borne out by the parties lengthy and detailed discovery regarding the Class List and Data Compilation, these overpayments total no more than approximately $460,000.00. Schlanger Declaration at ¶13.

Therefore, even assuming (1) a complete victory on liability and damages and (2) no remittitur by the Court, statutory and actual damages under the FDCPA would likely total approximately $960,000.00. The settlement provides class members with monetary relief of $550,00.00 and $9,250,000.00 in balance adjustments. Such class-wide relief is clearly within the range of reasonableness and, in fact, constitutes an outstanding result.

Regarding Plaintiffs' GBL § 349 claims, Section 349 provides for "… his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section." However, actual damages are required under the statute, which damages Defendants would vigorously contest as to the majority of the GBL subclass members.

Under reasonable assumptions regarding claims rates and other variables, the proposed settlement is very likely to provide that GBL subclass members who have not made

overpayments will be eligible for cash relief of $50.00, i.e. the statutory cap where actual damages do not exceed that amount. (These class members can also, of course, choose to receive a balance adjustment). Schlanger Declaration at ¶23.

Those GBL class members who have made interest overpayments will, in addition, be eligible for supplemental funds which, as reviewed supra, may well exceed the amount of the overpayments. Schlanger Declaration at ¶¶23-26.

Again, this result is not only reasonable, it is outstanding.

Moreover, the settlement relief provides fixed amounts of cash and balance credits available to class members now, rather than an indeterminate amount (which might be $0) at an indeterminate point in the future.

## IV. THE INCENTIVE AWARD TO THE CLASS REPRESENTATIVES IS REASONABLE

As noted above, the Settlement Agreement provides that, in recognition of their efforts on behalf of the class, each of the four Class Representatives will receive $5,000 and an adjustment of his or her stated account balance to zero.

This incentive award is within the range regularly approved by Courts in this jurisdiction. *See Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting incentive awards customarily vary between $2,500 and $85,000 and approving a top award of $10,000 for the lead plaintiff); *Mills v. Capital One, N.A.*, No. 14 CIV. 1937 HBP, 2015 WL 5730008, at *17 (S.D.N.Y. Sept. 30, 2015) (awarding eight named plaintiffs service awards of $6,000.00 each and three opt-in plaintiffs $3,000.00 each); *see also Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (awarding $50,000 and $100,000); *Ferrick v. Spotify USA Inc.*, No. 16-CV-8412 (AJN), 2018 WL 2324076,

15

at *11 (S.D.N.Y. May 22, 2018), *appeal dismissed sub nom. Ferrick v. Diable*, No. 18-1702, 2018 WL 6431410 (2d Cir. Oct. 9, 2018) (awarding $25,000).

Moreover, it should be noted that but for the agreement of these four Class Representatives to substitute into this case—one which had received considerable publicity and which, by its nature, references debt collection activity on purportedly unpaid balances—the action would have been unable to proceed and the class would have received nothing.

The proposed incentive award is fair and reasonable and should be approved.

## V. THE ATTORNEYS' FEES PROVISIONS OF THE SETTLEMENT ARE REASONABLE

"Courts have encouraged litigants to resolve fee issues by agreement." *Foti v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 16511, at *21 (S.D.N.Y. Feb. 19, 2008). "This is particularly so if, as in the instant case, the amount of attorneys' fees is in addition to and separate from defendant's settlement with the class." *Id.* at *21 (internal quotations omitted).

The FDCPA authorizes courts to award reasonable attorneys' fees and costs to a prevailing consumer. 15 U.S.C. § 1692k(a)(3). Moreover, attorneys' fees are available to prevailing plaintiffs in class actions under Fed. R. Civ. P. 23(h). N.Y. Gen. Bus. Law § 349(h) also provides for an award of attorneys' fees to a prevailing plaintiff.

Following the lodestar method, a "presumptively reasonable fee" is determined based on "the product of a reasonable hourly rate and the reasonable number of hours required by the case . . . ." *Perez v. AC Roosevelt Food Corp.*, 744 F.3d 39, 44 (2d Cir. 2013).

In the instant case, the Settlement Agreement provides that the Defendants shall pay Class Counsel fees and costs of $550,000.00. This amount, which the parties negotiated separately from class relief, is in addition to and separate from all monies paid to the Class and Representative Plaintiffs. Class Counsel's lodestar time and expenses since this case's inception

exceed $925,000.00 to date. *See* Schlanger Declaration at ¶40. Thus, the settlement provides only for approximately 59.5% of Class Counsel's lodestar to date.[5]

Class Counsel's final lodestar, even absent any objections or unanticipated contested issues, will of course be higher than their current lodestar fees and costs as significant work relating to the Fairness Hearing, class administration logistics, and fielding class member inquiries remains.

In sum, the agreed-upon amount of $550,000.00 for attorneys' fees and costs is eminently reasonable in light of the work performed and the education, skills, and experience of counsel, and the positive outcome achieved.[6]

In sum, the attorney's fees provisions of the Settlement Agreement are eminently reasonable considering the work performed and the education, skills, the result obtained, and experience of counsel.

## VI. THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED

Once preliminary approval is granted, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval. *Am. Med. Ass'n v. United Healthcare Corp.*, 2009 U.S. Dist. LEXIS 45610, 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009). Pursuant to Rule 23(c)(2)(B), when a class is certified under Rule 23(b)(3), the Court must direct to the class members "the best notice practicable under the circumstances, including individual notice to all members, who can be identified through reasonable effort."

---

[5] Class Counsel will submit detailed time and expense records, as well as additional biographical information regarding relevant attorneys and staff, within 21 days of submission of the instant motion.

[6] Class Counsel's education, skills, and experience were previously set forth in the Motion for Class Certification. *See* ECF 98.

With regard to class certification pursuant to a settlement, the notice "must fairly apprise the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 70-71 (2d Cir. 1982)).

The proposed notice plan is robust and easily meets Rule 23(c)(2)(B)'s requirements. The proposed short form, long form, email notice, and website contain all the necessary information, including the nature of the lawsuit, the class, the settlement terms, and the options available to the members of the Class. Further, the notice plan and claims process include:

1. postcard notice with an attached, postage pre-paid claim form;

2. supplemental email notice where emails can be identified and confirmed;

3. an additional postcard notice if the claims rate falls below 5% as of 50 days prior to the end of the claims period

4. a website containing the long form notice;

5. online claim forms including an interactive feature that allow class members to input identifying information and compare different options, *i.e.*, estimated cash payment vs. estimated balance adjustments; and

6. a toll-free number the Class can use to obtain additional information.

## CONCLUSION

For the reasons set forth above, the parties' joint motion to certify the settlement class and for preliminary approval of the class settlement should be granted and the Court should set the various dates and deadlines for notice, opt-outs, exclusions, objections, and a hearing under Rule 23.

Dated: March 1, 2019

                                    Respectfully Submitted,

                                    */s/Daniel A. Schlanger*
                                    Daniel A. Schlanger
                                    Evan S. Rothfarb
                                    Schlanger Law Group LLP
                                    9 East 40th Street, Suite 1300
                                    New York, NY 10016
                                    T. 212-500-6114
                                    F. 646-612-6996
                                    dschlanger@consumerprotection.net
                                    erothfarb@consumerprotection.net

                                    O. Randolph Bragg
                                    *admitted pro hac vice*
                                    Horwitz, Horwitz and Associates, Ltd.
                                    25 E. Washington, Suite 900
                                    Chicago, Illinois 60602
                                    (312) 372-8822
                                    (312) 372-1673 (Facsimile)
                                    E-mail: rand@horwitzlaw.com

                                    *Counsel for Linda Taylor Gay, Marianne Norelli, Galo Uribe, Rocco Commisso, and the Putative Class*